Mr. Perlow. Good morning, Your Honors, and may it please the Court, Juan Perlow of Curtis-Miley-Prevot for VTB Bank. Never before has a U.S. court purported to restrain a foreign sovereign instrumentality from enforcing its rights under its own laws in its home courts, ex parte, without proper service of process under the Foreign Sovereign Immunities Act. The last time district courts in this circuit entered ex parte judgments against foreign sovereigns under the FSIA, this court categorically rejected that decades-old practice and vacated the judgments as having no legal effect from the outset because the FSIA simply does not provide for summary ex parte procedures in any context. As JPM and the Chamber both acknowledge, VTB is a foreign sovereign instrumentality. It's a state-owned bank in Russia, and so the only basis for acquiring jurisdiction under VTB is the FSIA, which provides the exclusive methods for serving a foreign sovereign instrumentality to establish personal jurisdiction. Unless there's consent, right? A foreign sovereign can consent both to a waiver of sovereign immunity and to personal jurisdiction, right? If there is a—under the Foreign Sovereign Immunities Act, Section 1608b1, if there is a special arrangement for service of process that has been agreed to, then that can provide a basis for service, but that doesn't exist here. A basis for service, but if the foreign sovereign agrees, like I'm going to participate in sovereign immunity, I waive objections to personal jurisdiction, I want to participate in the litigation, they're not prohibited from doing that, are they? That's the way all those immunities work, right? Your Honor, they can consent, but here there is no consent to service of process or personal jurisdiction. Are you just, though—I mean, to me, the service of process, I mean, it's sort of two questions. One, have you waived immunity, and two, have you agreed to a certain form of service of process? Are you accepting that the immunity part of the—the waiver of immunity part is satisfied? Because you sort of just jumped to the service question. No, we don't, but it is a threshold question here in terms of service of process, because that's what you need to establish personal jurisdiction over a foreign sovereign instrumentality. Under Section 1330b, I believe, personal jurisdiction is service of process plus a waiver of sovereign immunity. But it also might be a consent to personal jurisdiction, right? Your Honor, consent— I mean, I guess, you know, just to be more concrete about it, right, we have the document about the account terms, right? There's a dispute about whether it applies to this account or other accounts. So let's just say for purposes of argument that we're going to put that aside. Let's say this is—was signed in connection with the 1993 account. It includes both a waiver of sovereign immunity and a form of selection clause, which would be a waiver of personal jurisdiction. So if, in fact, you agreed to waive sovereign immunity and to consent to personal jurisdiction, then the district court would have had jurisdiction, right? No, Your Honor. First of all, this—we know categorically that it was not signed at the time that the account was opened in 1993, because the 2008 account— Yeah, but I wanted to put that aside. I mean, I'll get back to that. But I wanted to put that aside. So, like, let's say that's not an issue. Let's say you did sign this, and there's no question that it controls this dispute. If you had, in fact, agreed to waive sovereign immunity and you signed a form of selection clause, then there wouldn't be a jurisdictional problem, right? Yes, there would, because you still need service of process. And you have to look at the notice— Why would we need service of process if a party agreed—consents to personal jurisdiction? Why would we need to establish personal jurisdiction if the counterparty has agreed to consent to personal jurisdiction? Because you still need to properly serve the notice of the suit and the summons and all of that.  Because you need proper notice before the court can establish its own— But obviously, there's notice if the counterparty has consented and appeared, right? I mean, at the very least, that's not a jurisdictional problem. If, in fact, the party has consented to personal jurisdiction, there would be personal jurisdiction, right? Your Honor, there's a fundamental difference between consenting to the forum and litigating here and waiving the service of process requirement to begin the action. And what we're talking about here— So you're saying that when a party consents to personal jurisdiction, what they're really saying is, well, I consent to personal jurisdiction, but I'm still insisting on various formalities about the service of process? Yes, that's correct, because you may say I'm going to litigate in New York, but that doesn't necessarily— And so if a party has consented to personal jurisdiction, which is a basis for exercising personal jurisdiction, normally we would say that that means there isn't a jurisdictional problem for the court. So what is the significance of the service of process procedures? Because service of process is what is required to begin the action to establish personal jurisdiction, to give the other side proper notice of the action. It's required under the Foreign Sovereign Immunities Act. It's mandatory. Consent to personal jurisdiction of the forum is not a waiver of service of process. You're saying even if a foreign sovereign consents to personal jurisdiction, they want to litigate the case, they show up in court, they want to litigate it, let's say the opposing party doesn't like the outcome of it, the plaintiff doesn't like the outcome, they could come along and say, well, actually the court never had jurisdiction to begin with because we didn't go through the formalities of service of process, and therefore we could throw out the judgment. Well, that is what happened— It's a jurisdictional defect of the court even if the foreign sovereign has consented to suit and appeared and litigated the whole thing. But that is what happened in the Mobile case, Your Honor. The Second Circuit here looked at whether there was jurisdiction under the Foreign Sovereign Immunities Act. An exception to sovereign immunity would have applied under the arbitration exception, which would have satisfied the requirements, and there was a sovereign there, so there was no due process requirement. All that was left was service of process, and service was not made, and the district court below entered an ex parte judgment. And is your argument—do you think it's a special rule for foreign sovereigns? So if a private party consents to personal jurisdiction, but there's some defect in the service of process, would that also mean there was a lack of personal jurisdiction? I don't believe in the private context a consent to personal jurisdiction is a waiver of service of process, but to the extent that it is, there would be a special rule for sovereigns because under the Foreign Sovereign Immunities Act, statutorily, you need service of process, plus— Well, the Foreign Sovereign Immunities Act says there shall be personal jurisdiction if you go through all the formalities, but it doesn't preclude the possibility that you might consent to personal jurisdiction. But again, that's the fundamental distinction, Your Honor. There is no—I am not aware of an authority that says that you automatically waive service of process simply by agreeing to litigate in a forum. And certainly under the—here, that's not an argument that has been made by the other side, and we don't have a situation where VTB appeared and consented fully to the jurisdiction of the court. From the beginning, it challenged the jurisdiction of the court and challenged service of process. So appearing to litigate does not in any way— It's not about appearing to litigate, but it's pretty well established that if you sign a forum selection clause, that is a consent to personal jurisdiction. But it isn't a waiver of service of process, and I think that's the final point that is missing here, and that is the Mobile case. And the second—this is a decision here. It's a amicular case. If you don't have service of process, proper notice on the foreign sovereign instrumentality, you do not have jurisdiction to enter a judgment. There was no jurisdiction to enter a TRO, and everything else that follows— But to be clear, you're not claiming that your client didn't get actual notice. Leave aside whether—what's been discussed thus far. You're not claiming your client didn't have actual notice. In fact, there was litigation started in Russia as a result of this litigation, correct? So you're not claiming that your client didn't have actual notice. Well, first of all, the litigation started in Russia before the litigation started here. So the Russia action was the first filed action. And it really is irrelevant whether there was actual notice if no proper method of service was used to effect that notice, and that is— But the answer to my first question would be, yes, you had actual notice, but your response is it doesn't matter. Correct. Okay. That's correct. So I was looking for an answer to my first question. Yes, there is no dispute that there was actual notice, but that doesn't matter because as a matter of law, you need to have attempted service using a proper method of service. And here, email service on a foreign sovereign when there is a dispute as to whether the terms even apply. Certainly the notice provision itself is not sufficient to establish— But there's a dispute as to whether the terms apply, but at a PI stage, you would just need to show a reasonable probability that you could establish jurisdiction, right? So why wouldn't it be the case that there's some indication from the face of the document that it applies to all accounts and services at Citibank? There's also some indication that it applies—that it's the standard terms that would apply to any accounts. And so why couldn't the district court reasonably say, looking at this document, it's pretty likely that J.P. Morgan will be able to show either that the best reading of this document is that it applies to all accounts at J.P. Morgan or that there is a similar document that was signed in connection with the 1993 account? Well, a couple of things on that, Your Honor. One, that's not the analysis that the district court engaged in here. The court simply said—accepted the misrepresentation that this was the terms that were signed at the time the account was opened, which now is clear, undisputedly false. But when you look at the account terms themselves, there is no indication that it applies to all accounts. In fact, the opposite is true. It talks about the account terms applying to accounts and services which the customer may select. It talks about accounts subject to the account terms. All of this suggests that there are accounts that are not subject to these terms. And when you have an account that was opened in 1993— I'm just saying there's no indication. What about the comments about it governs the relationship between the— the terms are governing the relationship between the parties, not just this specific account? I mean, there's language that addresses that, that it's about your relationship with J.P. Morgan. That doesn't suggest that it's not just about this particular account? The language is not in the account terms, Your Honor. And when it talks about the— When you say it's not in the account terms, it's in the account acceptance letters in those documents. Do those not—do those not count? Well, it's not—the letter is different from the account terms. We have to look at— But if the letter says— The letter is the actual thing that's being signed. Well, but even if it says the relationship, it still has to be governed by the limitations of the account terms. And the account terms talk about accounts subject to the terms. So it may govern the relationship with respect to the accounts that are governed by the account terms. And the terms themselves have limiting language. But if the letter says—you're kind of separating out, okay, account terms versus the account acceptance letter. If the letter addresses those terms, you're saying that's not enough? If it's not in the—I guess I'm not sure what you're saying. No, it's not enough because you have to look at both documents. You can't look just at the acceptance letter. You have to look also at the account terms. And the account terms do not speak of all accounts. So you may have a document that applies to the relationship with respect to certain accounts. And that's the point of looking at the language in the account terms themselves. It does not apply to all. In fact, if they wanted it to apply to all— But why do you think it wouldn't apply to all? I mean you were talking about the customer may select. This is the natural way to understand the idea that these terms and conditions apply to the accounts which the customer may select. It means like whatever accounts the customer opens at our bank are going to be governed by these terms. Well, it doesn't say all the accounts opened. It says may select. And I think that's an important distinction. I think the way to read it is that we have these standard account terms. And the customer can select which accounts it wants to be governed by the terms. But it could opt out of the terms for other accounts we have at the same bank? Like that's the way to read select? Well, it would be consistent with the subsequent language about all accounts subject to the account terms. That, again, suggests that there are accounts that are not subject to the account terms. And when you look at the other language in that provision talking about the accounts established with the bank, the bank is J.P. Morgan. I know that you're saying that this is not what the district court did. But let's say I were to decide that I applied the standard as to whether there's a reasonable probability that J.P. Morgan would be able to establish jurisdiction, meaning that these terms apply. If I read the acceptance letter that says it applies to your accounts in the plural, it says it applies to all the accounts the customer may select. It describes itself as standard in general terms. Is there not at least a reasonable probability that it will turn out that these are the terms that govern the 1993 account? But that doesn't matter. I'm not really sure that that is correct, but assuming you're hypothetical here, it doesn't address the notice provisions not providing for service of process. But putting all of that aside, putting all of that aside. I didn't really think of it as a hypothetical because I was reading from the actual document. But okay, I understand. So putting all of that aside for a moment, even if you have this reasonable probability of jurisdiction, once the party comes in and challenges it and it's determined that jurisdiction is improper, everything that happened has no legal effect. If it were determined that jurisdiction is improper, but whether these terms apply makes a difference as to whether jurisdiction was improper. So then let's assume for the sake of argument that jurisdiction was proper, that service of process was made, and that everything was correct there. You still have a situation where you've entered an anti-student injunction against a foreign sovereign instrumentality. And there are problems with that situation. I would refer you to the Nexterra case in the D.C. Circuit. Nexterra went through a very detailed analysis about how it is virtually unprecedented to enter an anti-student injunction against a foreign sovereign. But what about the merits of whether the injunction should have issued, right? But that's not about the jurisdiction. Well, I thought we were assuming that jurisdiction was already established. So if jurisdiction is already established, then we have to look at whether the injunction was properly entered as a matter of the merits. Whether the injunction is properly entered or not, if the district court has jurisdiction over the case, can't it enforce compliance with its orders? It might be that you could get it overturned on appeal or something like that. But in the meantime, you would have to abide by contempt order. Well, a couple of things there. One, the Nexterra case. The Nexterra case, there was personal jurisdiction over Spain. And the district court entered an anti-student injunction, which was similar to here, an offensive anti-student injunction, a defensive anti-student injunction. And the D.C. Circuit said that was improper and vacated the anti-student injunction. But we're not – that's not – the anti-student injunction is not what's in front of us right now. What's in front of us or what we're ruling on are these contempt orders, correct? And the injunction has been, I guess, dissolved, and that's not the thing that we – that's on appeal, is it? Well, we have appealed the denial of the motion to dissolve or the dismissal of the motion to dissolve. The court denied that as moved once the suit was withdrawn. Right. So the only issue before us is a finding of contempt and then the $500,000 fine imposed as a result of that contempt. But what is before you as well is the basis for entering the contempt. And that all comes up with the final order for the contempt as well as the sanctions. If there – which includes all of the arguments we were talking about – jurisdiction, the abuse of discretion – all of that comes up with the order on contempt and sanctions. And it's also in our notice of appeal. But, OK, I'm glad you raised that because when the court asked counsel, did you violate the court's injunction in order to make a determination of whether the party was in contempt, the response was, we don't think the injunction is valid, but if it were valid, yes, we violated it. Right? That was the response. We don't think the injunction is valid, but if it were valid, we violated it. And based on that admission, the court found your client in contempt. The way to challenge an injunction is to come to this court and appeal it. But that didn't happen. You just – your client didn't follow the injunction and rather than appealing it, admitted to the district court that it violated that injunction. And so that's what we're dealing with here because now the injunction is moved because the lawsuit has been withdrawn. But the court's order was never properly challenged. And the challenge isn't just to choose to violate it and then come before this court, is it, to say, well, I shouldn't have been held in contempt because I violated an order that was never found to be invalid to begin with. Well, appeals from contempt operate that way normally, Your Honor. A litigant has the option to take the risk to violate the injunction and then either be vindicated on appeal or not. And that all gets decided at the time that the sanctioned contempt is appealed. You hit the nail on the head. It's a risk. And your client took the risk, and now the injunction is gone because it's moved. And what we're left with is whether there was an intentional violation of a court order. So how are we—why don't you argue that? Why that should be reversed. Okay, well, then let me focus on the sanction itself because if we accept jurisdiction— But before we get to that, just to clarify, I mean, I take it your argument is, you know, if we were to agree with you that the issuance of the injunction was, like, so egregious that it would also be an abuse of discretion to, like, enforce it with punitive— you know, with significant contempt sanctions. That would be an option for us. It would not be required in the way that if it was issued without jurisdiction, then the contempt orders would be ipso facto invalid. But we could decide that if the injunction was so egregious, then, like, the contempt orders sort of as part of that were also egregious. That is correct, Your Honor. And that is step two. If you think about it sort of in three steps, like, step one is jurisdiction. If there was no jurisdiction, the whole thing is void, no legal effect. Step two is the anti-suit injunction was an abuse of discretion here, and that's where Nextera comes in as an important— I mean, normally we do say that even if the district court is wrong, it's still—you have to comply with the order in the meantime. And so even if the district court is wrong on the merits, we normally would say you still have to abide by the injunction, and the district court can enforce compliance with its orders. But I guess it wouldn't be impossible for us to say, well, sometimes it might be so egregious that we might even vacate the contempt order. Well, that's right, Your Honor. If it's so egregious, there really isn't anything to support the contempt. All that's left, at least not is civil contempt, and that is all we're dealing with here. We're dealing with a civil contempt sanction that is neither coercive or meant to be a deterrent because the injunction is now moot. But when it was first issued, it was trying to coerce compliance with the anti-suit injunction, right? No, because J.P. Morgan had already at that point indicated that it was going to dismiss its action. So there was nothing to coerce in the sense that the action was going to go away. And it isn't compensatory either because there's no harm that the— Just to be precise, I mean the injunction was still in place and your client was not complying with it. So you're saying we should treat it as if it wasn't really in place because J.P. Morgan had indicated that it would eventually dismiss it. Is that the – that's the idea? Well, and that's what happened. Once there was nothing to deter, there was nothing to coerce, right? At that point, J.P. Morgan— But there was something is what I'm saying. You're just saying, well, that's a formality. Like you should—we should act as if there really wasn't anything. Well, there wasn't—the sanction has to be prospective. It has to be forward-looking. So at the point at which you enter the sanction, you're trying to get the litigant to do something or not do something. The sanction lost its coercive effect once J.P. Morgan indicated that it was going to dismiss its own action. I mean, it was still a valid contempt—it was still a valid order at that point. The fact that J.P. Morgan is saying, oh, we're probably going to withdraw it. What if they didn't? The court has issued an order saying withdraw the Russian action or what have you or pay this $500,000 fine. And at the time that order was issued, it was valid. And the fact that there's reason to think that, well, probably the lawsuit is going to be withdrawn soon so we really weren't required to comply with the court's order. I don't understand that argument. Well, the problem there is that the district court itself understood that it was no longer coercing VTB into anything. And it wasn't compensating J.P. Morgan for anything. And it nevertheless purported to enter a sanction—not purported. It then entered a sanction that was meant to vindicate its own authority and to—for noncompliance. So that's a punitive sanction. But there was still time to comply. The order was worded as withdraw the action or else pay $500,000. And at the time the order was issued, that action was still alive and this action was still alive. So it was still forward-looking at the time it was issued. But it doesn't coerce anything anymore. And that's why it moves into the punitive realm because all that's left over now is, as the district court itself recognized, is vindicating the court's own dignity and trying to punish VTB for this noncompliance. So are you suggesting if a court issues an order to try to get someone to do something, there's not compliance, but then whatever was at issue goes away, then it doesn't matter. It's, you know, no bar, no foul. In the civil context, that's right, Your Honor, because you can't—a punitive civil sanction is an abuse of discretion. So we know that, I believe, from the paramedics case. And so if there is nothing to coerce, nothing to compensate, and all that's left is punishment for noncompliance, that is not an appropriate civil— You keep saying all that's left, but that was not the case when the order was issued. When the order was issued, there was an opportunity. You can comply or you can pay this fine. Everything was—all the actions were still alive. That didn't happen. So the fact that circumstances changed doesn't change what the nature of that order was when it was issued. Or maybe that is your position, that it was a proper civil coercive order the day that it was issued, and then a week later or however long later, it changes the nature of the order? No, it definitely is not our position that it was a proper civil coercive order. Again, we're now in the realm where we put aside jurisdiction. We're in the realm where we put aside the abuse of discretion for entering a broad anti-suit injunction against a foreign sovereign instrumentality without considering all of the sensitivities of doing so. We're now in the world where you have an enforceable, valid anti-suit injunction that is not being complied with. There are technicalities that weren't being complied with. And the court then says, even though I'm not going to compensate for anything, even though there isn't anything left to coerce, I'm still going to impose a fine because I didn't like the fact that you didn't comply. I'm not sure that that's accurate. The court imposed the fine when you didn't comply. The court didn't say, I'm going to impose a fine now that the lawsuit has ended. The court imposed the fine for a contempt that had already occurred. And your remedy for that is, well, it wasn't a valid order, but you never appealed that order and the order mooted out. If that's the case, then any time someone intentionally violates a court order and things don't change, just like Judge Lee was saying, well, then parties could just wait out years until the issue is moot, the conduct that was meant to be controlled is over, and then say, well, I don't have to pay the fine for that contempt. I already engaged in and violated. I don't have to pay a fine. I'll just wait things out. That's not how it works, counsel. Well, that's not what happened here. But I don't think that there is a situation where we're not dealing with a situation where there is this long term sort of noncompliance with an order that was validly entered that was not an abuse of discretion. What we're talking about here is things happening almost simultaneously. And the sanction is entered at the same time that the decision to deny the motion to dissolve as moot is made. So all of it is happening right at the same time. And the district court itself acknowledges that there is the finding of contempt was before the suit was dismissed. Your Honor, I have of contempt for the admission of the violation of the court order was before the lawsuit was dismissed voluntarily by Chase. Correct. Your Honor, I would want to check that and confirm it on reply or on rebuttal. That would be great because that would be important. Yes. And so I don't want to I don't want to misspeak. So that's why I'd like to take that up on rebuttal. OK, great. So we'll hear from you again. Let's hear from the. May it please the courts. Samir Degas and Amicus, the Chamber of Commerce. This case involves a flagrant violation of judicial authority and an open challenge to the rule of law. Under the threat of ruinous penalties, VTB Bank forced an American litigant to cede their right to access to justice in the U.S. courts. And then openly refused to comply with the plain terms of an injunction and the plain terms of a subsequent contempt order. And to this day, VTB has not deposited the money it owes in the district court's registry. And it's continuing its vexatious campaign in the Russian courts to seize JPM's assets simply because JPM complied with U.S. law pursuant to a sanctions order by OPAC. And unbelievably, now VTB is now seeking to avail itself of this court and getting an order that validates its outrageous conduct. And I think as the colloquy that we just heard underscores, there are multiple alternative ways in which this court can affirm the decision below. The most straightforward one is that under settled law, a party's disagreement with a court's jurisdictional ruling is not grounds to ignore it. Or alternatively, the court could simply look to the plain terms of the contract, which unequivocally state that they, quote, supersede and replace any other account conditions previously sent to the customer. And as Judge Menasche said, they contain a valid forum selection clause that waives personal jurisdiction. So – But the plain thing could refer to any account terms that apply to the particular account, right? Well, the phrase is the account terms and account documentation supersede and replace any other account conditions previously sent to the customer. And account conditions is not capitalized or anything. It's account conditions. So I think – And it describes itself as general conditions that apply to all accounts. Yeah, and the latter – So is your argument that this document applies to the 1993 account, or the existence of this document shows that you'll have a reasonable probability of showing there was a similar document that applies to the 1993 account, or both of those things? I think the argument JPM made below is that this document does apply to the earlier account. And I think that is what the plain text and all the contextual information in the letters suggests. I also think you're correct that all the district court had to find was that it had a reasonable probability that it had jurisdiction. And I also think – What Mr. Perlow was saying, well, even if there's a waiver of personal jurisdiction, the FSIA says that you still need to go through the formalities of service of process under the FSIA, and there isn't personal jurisdiction without that, even if there's consent by the sovereign. Is that correct? I don't think that's correct. I mean you can certainly waive sovereign immunity in this contract, waive sovereign immunity more broadly.  And I mean personal jurisdiction is ordinarily waivable. So I mean they could have waived personal jurisdiction. It's ordinarily waivable. That's right. But does the FSIA say it's not enough just to have a waiver. You also need to go through the FSIA procedures to serve process. I mean I don't think it does. I think this would be enough. But again, we have multiple –  I mean why? So if the FSIA prescribes that, why is it enough? Because that's just a means of getting personal jurisdiction under the FSIA. So you have consent and that's enough. There's no jurisdictional problem. Right, exactly. But again, I think there are two other things. So the most threshold, most fundamental argument I think is even if – I don't think the court even needs to necessarily get to the account terms because the fact that they disagree with the decision that the district court made is not a grounds to ignore the order. And so regardless of any of this stuff, even if the district court made a mistake, this court in Paramedic said, persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed. I just read it says with jurisdiction. Right. So if we thought the district court was acting without jurisdiction, wouldn't that be a basis for vacating the contempt order? No. And I think Judge Ginsburg's – well then Judge Ginsburg's opinion practical concept versus Bolivia lays this out well. So you can't just – you still have two options basically. One option is you go into court, you contest jurisdiction, you make your argument in front of the court, and if you lose, then that's res judicata for purpose of that case. You know, you have to abide by the court's order, and that goes back to cases like Baldwin and the full faith in credit clause cases. And, you know, this is the line from Insurance Corporation v. Ireland v. Compagnie de Bauxites de Guinée, the Supreme Court case from 1982. By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction. That decision will be res judicata on the issue in any further proceedings. And so it's res judicata, and then you can go to the court of appeals, challenge it if you get the order reversed. That's fine. But once you have submitted to the district court's jurisdiction, you have to abide by it. Your other option is you don't have to – So you have to abide by it until you go on appeal and get it in return. Absolutely, exactly. We're here doing that. Well, but they didn't abide by it. So there was an invalid injunction, and what they had to do is abide by the valid injunction. They could have had an emergency appeal and said, this injunction is so catastrophic, please stay the injunction. That's the very ordinary course. The one thing you absolutely cannot do is go into the district court, defend yourself, and make your jurisdictional argument. Disagree with what the district court says and says, you know, the district court was wrong. And as a result, I'm just not going to comply with the district court's injunction. I'm going to go and appeal something. So what difference does that make exactly? So if we're on appeal and we think now we can review the jurisdictional determination, if we don't think there was a jurisdiction, we would vacate the contempt orders. And so what's the difference in saying, like, from now going forward, they're vacating, it's vacated, and saying it was never valid to begin with? I don't think you would necessarily vacate the contempt orders, because the contempt order is for violating an injunction that was lawful and obtained with jurisdiction at the time. And that's basically paramedics. So if you put together paramedics and – When you say obtained with jurisdiction, I thought I was introducing the hypothetical where we thought there wasn't jurisdiction. So when you say jurisdiction, you mean based on the district court's belief that there was jurisdiction. Which is res judicata until this court reverses it. And so that's – I think practical concepts is really good on this. So the two options are go to court, contest it. If the district court rules against you, you have to abide by the injunction, go on appeal, you can get it reversed. But you can't file the injunction in the meantime. Or you can not show up at all, not show up at all, and then have a default judgment entered against you, and then go and get a rule 60B4 motion that voids the default judgment for lack of jurisdiction. Those are your options. And what you cannot do is go contest jurisdiction, and then basically take two bites of the apple, contest jurisdiction, and say, well, if I win here, great, I'm going to get the result I want. If I lose, I'm going to just pretend like the district court's order wasn't real and they're not binding on me and the injunction doesn't bind me. I'm going to ignore it completely and flout it, go on appeal, and then if I win, great, any resulting sanctions are fine. That violates paramedics, and that's a threat to injunctions and the rule of law because basically any litigant could say, well, I just don't agree with what the district court said. It's a mistake. But they can only do that if, in fact, an appellate court is going to agree that there wasn't jurisdiction. Right. But the principle is, and that's paramedics, if you're subject to an injunctive order, you have to obey it until it's modified or reversed, even if you have proper ground to object to the order. And I think they would agree with that, you know, obviously if you say the injunction was violating my constitutional rights, the injunction was, you know, the equities, the balancing equities were wrong, all the other factors, none of that means that you just say, oh, I'm not going to obey the injunction anymore until there's a final judgment from a court of appeals. So your point was the proper course of conduct would have been to have sought an emergency appeal with this court to say, one, the district court doesn't have jurisdiction, and two, this anti-suit injunction is legally invalid. And had they done that, they could have even sought a stay of the injunction in the district court, or a stay of the injunction here pending our review. But that wasn't done. It was just a simple ignore. And under their theory, why would anyone ever do that? I mean, why do litigants come in all the time and seek stays of injunctions and seek emergency relief? What they should be doing is just saying, oh, I don't, you know, I disagree with it, so I'm just going to not comply with it, and then if I win on appeal, I'm going to get it reversed and any resulting sanctions for noncompliance will be reversed too. I mean, that's just not the ordinary rule. And they do have the option to just not appear at all, and then there's no rescue to come. They didn't fully litigate the issue. Then they can go vacate the default judgment. And the standard there is a lack of arguable jurisdiction, and that is what judgment actually in your opinion in Gator Assets says. In the context of a Rule 60B4 motion, a judgment may declare void for want of jurisdiction only when the court, quote, plainly usurp jurisdiction, or put somewhat differently, there's a total want of jurisdiction and no arguable basis on which it could have rested a finding that had jurisdiction. So when you, that's the standard in the 60B context. What they want is to come in, take a shot, lose in the district court, then come up on appeal and say, oh, it's void. You know, void is the language of 60B. If you want to say something is void, go through the 60B route, don't show up at all, go through the 60B route, and then you have to win on the arguable jurisdiction standard, which is much harder than what they're saying. They're saying, oh, there was an ordinary error here, and that means that it's void. I've never seen a case that says anything like that, and therefore we don't have to comply. We have not relocated a single case where someone has gone to court, litigated something, lost, then said I disagree with the jurisdictional ruling, I'm not going to treat it as binding on me, I'm going to ignore an injunction, I'm going to go to the court of appeals, and then get the whole thing vacated, including a sanction that is for an open defiance. I mean, as Judge Kahn said, just said, well, we don't, in court they said, we're not going to comply with this. And all of this is, of course, within the framework of they have forced the litigant, JPM, out of the U.S. courts through judicial warfare by going to Russia and obtaining an order that said we could seize almost $500 million of your assets. The basis of the argument that these are the two options facing a defendant are that just, if you litigate the jurisdictional question, that's law of the case, and then that just is binding the jurisdictional determination, regardless of whether an appellate court will later disagree with it, and the presence of Rule 60b-4 and the standards associated with it. Right. I mean, that's from Baldwin onwards, and that's what the Insurance Court of Ireland case says. By submitting the jurisdiction of the court for the purpose of challenging jurisdiction, you agree to abide by that determination on the issue of jurisdiction, and that was a case in which involved whether a court can issue a discovery sanction that involves deeming personal jurisdiction to be decided, and the litigant said, well, you don't have the power to issue any sanctions whatsoever because you don't have personal jurisdiction. So it's sort of circular and makes no sense to deem personal jurisdiction decided as a sanction, and the court rejected that because you're in front of this judge, so this judge can make a determination as to jurisdiction even by using a sanction or a presumption, and it has jurisdiction. Then you can go and appeal and get that reversed if you want, but a determination by a district court judge about their own jurisdiction in a litigated case where you go in and make your arguments, that is binding on you until you get it reversed and you don't get to ignore it and you don't get to say, I'm going to defy the injunction, and then you don't get to get all the sanctions for open defiance to be unwound as a result of that. That's definitely not the law. What do you do with a case if, let's say we agree with you that a party has those two options, but they in fact do the thing that you say they shouldn't be allowed to do, which is they litigate and lose and then take an appeal. Let's say we thought they were right about the jurisdictional question. You're saying we should say, well, they're right about the jurisdictional question, but because they did it this way, we're going to leave in place in perpetuity a contempt order that we think was issued without jurisdiction? I mean, you have discretion to say, you know, to unwind the sanctions order. I don't think there's any, you know, but their argument is you must unwind a valid sanctions order because there was no jurisdiction in the first place. That's not the law. I mean, to your earlier question, if you thought the whole thing was just outrageous, the sanctions had never been applied, is there any number of reasons you could? I mean, I know that I have lots of things, but I'm more of a principled reason for doing that. So I'm saying you wouldn't. I guess my question is, like, your argument, like, let's say we have your argument about the way the law of the case and Rule 60B work, but then let's say I actually do think that there was a lack of jurisdiction based on normal appellate standards. What happens to the remedy in that kind of a case? If there was a lack of jurisdiction, then you would say the underlying injunction was improper, but the sanctions order is retained because what happened? Because the litigant went in and just said refuse to abide by the injunction. The thing that the litigant did wrong, got sanctions for, has nothing to do with the propriety of the underlying injunction. The reason why the litigant was sanctioned is because they didn't listen to the court. They didn't respect the court. The court has a jurisdiction to determine its own jurisdiction. So to the extent that the contempt order was based on the court taking jurisdiction to decide a jurisdictional question, maybe it's coherent to say it had jurisdiction for the contempt order, even if not for the other? Yeah, exactly. I mean, it's a little bit like the thing you're saying about you just need arguable jurisdiction for a probable jurisdiction for issuing a PI or a TRO. I mean, jurisdiction is never, you know, once and for all. The question is, in that moment, what is the jurisdictional status such that does a litigant have to respect it? And at that moment, it's res judicata as that litigant. Now, of course, they can get it reversed. But when something is res judicata to you, you don't have the right to then say, I'm going to defy a court order. And the sanction flows from the fact you defied the court order, not from something about the underlying injunction. It just said, you know, and at this point, and so I think, and the only case they cite, by the way, is the Agudas case in the D.C. Circuit. And the difference there is that that was a situation where there wasn't an opportunity for those litigants to initially fight the sanction. That was a sanctions order on a different entity. And then the plaintiffs there sought to collect against various, I think it was Russian instrumentalities. And the court noted all of the stuff we've been discussing and noted the practical concepts, rationale that you have to go through these two different routes, typically, but said, here the difference is there was never an opportunity for those litigants to actually challenge the initial determination. So it's not, it was not litigated against them. So in that situation, yeah, it's a little bit more like the 60B scenario. Whereas here they did have an opportunity to litigate and could have appealed to this court. And did litigate. And chose not to. Correct. Not an opportunity. They came in and they did litigate it. They made all their arguments. Their arguments were rejected. And their point is, basically, because you rejected our arguments, you know, our arguments are right. You district court, you're wrong. So we don't have to listen to you. There's not a single case that looks like that. I do want to, if you have a couple more minutes to discuss the, because the one thing we haven't talked about. Mr. Perla was up there for a little extra time. So you can make this point. Great. So, I mean, I'm here to answer more questions about this issue. But then there's the other thing is that I actually think, equally, JPM's arguments are very strong. Just on the text of section 13, which is of the contract. So this is on the decision tree. You have, regardless of the merits, you know, they can't disobey the injunction. So they should lose, I think, they should win on this version. Then there's the argument with Judge Monashi you were describing, which is, if you think that they signed the account terms apply, they've signed a valid forum selection clause, so they've waived personal jurisdiction. There's another argument, which is they didn't show up to contest, initially, the TRO. They didn't show up to contest service of process. And in this court's decision in First City versus Rafferty and Bank, which they cited, pages 39 and 40, if they're brief, this court, you know, says if you have actual notice and you didn't show up to the TRO hearing, you've waived an injection to the service of process. So we think they lose on that ground. And there's a fourth round, which is. They don't show up, but then the minute they show up, they're contesting both personal jurisdiction and they're insisting on sovereign immunity. I mean, they thought the court didn't, I mean, can't waive subject matter jurisdiction. Like, why would that be a waiver that they just didn't show up? Well, it's just service of process, and so that's what this court said in Rafferty, in that if you don't show up, if you have actual notice and you don't show up, then you waive those services of process. Is the argument you're making that actually the contract could serve as a waiver of sovereign immunity and a consent to personal jurisdiction because of the forum selection clause, and that we don't need to decide whether the service of process is independently required or the failure to show up is a waiver of service of process, even if the person, there already was. Let me do the decision tree again. The first is the thing we've all been mostly discussing, which is regardless of the merits that count terms, regardless of whether the district court was completely wrong about its own jurisdiction, you got that one. Then there's the argument that they signed a forum selection clause, and all of these arguments they made go to personal jurisdiction. The forum selection clause waives any personal jurisdiction defense, and as a subject matter jurisdiction, the commercial activity exception, I think, unquestionably applies in this case. They barely make any argument against that. So that's a second full argument, a basis for reversal. The third, I think, distinct argument. The exception wouldn't on its own be enough because that would mean there's no sovereign immunity, but you still have to get personal jurisdiction. The commercial activity exception gives you subject matter jurisdiction, and personal jurisdiction is based on the waiver in the contract. In the contract. In the contract. But separate from those things. But if the contract is valid, we have a waiver of sovereign immunity, too. So the commercial activity exception doesn't.  Yeah. Fair enough. Fair enough. Three is, and I think an unconnected thing, is when you're just talking about the service of process issue, which they've been focused on, the fact that they didn't, and Rafferty and the court said, if you have actual notice and you don't show up for the TRO hearing, you waive an objection to service of process. So that's a holding from this court. That's, I think, a distinct reason as to service of process. Four, I think, if you then look to, and they have to win on all of these if they want to get through this, their argument is that section 13 of the account terms is not a valid method of making them aware of notice. And that says all account statements and notices. And they say that's not enough for a special arrangement of service. They don't cite, you know, we found at least half a dozen cases, including the Preble-Risch case, the inarbitration between space Laurel case, that have language very similar, all notices, all communications, that all say that's fine. They don't cite a single case to the contrary. Why is it a natural way to read section 13? We're talking about notices about the accounts. Like, you know, your account statements and notices about how the account's going to be treated. It doesn't say anything about service of process or about litigation. And it doesn't have to. So in all those other cases, just saying a general thing about all notice, all communications, that's sufficient. There's no case that says it has to be specifically about litigation. And, in fact, all the time, all these banking arrangements are done with these kind of general terms like this. They say, oh, it must relate to the account statements. That's not true. I mean, all account statements is capitalized and notices is lowercase. And there are nine. Your argument is a little stronger than that because the account terms do talk about the possibility of litigation. So, you know, you might infer that notices might include a notice of a litigation. Right. And I was going to mention, and that's section 17.7, the waiver of sovereign immunity, specifically talks about notice in this exact context. You know, it talks about to the extent the custom has acquired any immunity from jurisdiction of any court, they waive that as to legal process, brackets, whether from service of notice. So, you know, they're talking about using the word notice in the context of legal process in a different provision of the contract. I mean, I don't know. When you talk about service of notice and the connection with legal process, you're talking about notices in connection with account statements. Well, I think it just shows there are nine uses of the word notice, and they're all pretty different. It just shows notices is not just linked to account statements. It's broader. But the other thing, just one more overarching thing about this, is that they really conflate the distinction between 1608A and 1608B, which are the two different provisions for service of process. 1608A is for actual states. 1608B is for state instrumentalities. And the standard is really different. So this is from the D.C. Circuit's decision in Transoro. The authorities generally hold that 1608B may be satisfied by technically faulty service that gives adequate notice to the foreign state. The distinction is neatly tailored to the differences between foreign states and agencies' instrumentalities because the latter typically have international commercial enterprises and have a sophisticated knowledge of the United States legal system. And then this court referenced that in the Raffodin case, and then this is the language from the Magnus case in the Fifth Circuit. Substantial compliance with provisions of service upon an agency instrumentality of foreign state. That is service that gives actual notice of the suit and the consequences thereof is sufficient to effectuate service. And then notes that it's in accord with the Third, Sixth, Ninth, Eleventh, and D.C. Circuits. So you really only need actual notice and something which is substantial compliance. This idea you need to have this super rigorous compliance when it comes to service is not true under 1608B. The most important thing there is actual notice, and there is not, we don't know, I mean, even in all the cases, 1608A cases, even in those situations, oral notices, language like that is held to be enough, but there's certainly nothing in the 1608B context that says something like this is not enough. So even if you drill down to your fourth place on the decision tree, you know, I think they have a pretty weak argument even on Section 13. Okay, well, we've gotten pretty far into the decision tree. So I think we have that argument, and we'll hear from Mr. Perla again on the floor. Thank you. There's a lot that was wrong on the law with what my friend on the other side has said, but I'll try to hit the high points. First of all, I'm glad he finally got to the Agudas case because that is the problematic case for them. That is exactly what we're talking about here. We're talking about a situation where Russia appeared in the case, litigated jurisdiction, thought it had lost in the D.C. Circuit, decided to stop participating, disobeyed orders to return property, and then several years later, instrumentalities against whom the sanctions were being enforced came in and said the jurisdiction was never proper to begin with, and the D.C. Circuit said, you're right, and therefore everything else has no legal effect and vacated the judgment, vacated the orders, vacated the sanctions. It's hard to believe that had Russia come back in and made the exact same arguments that the court would have rejected them over some, putting form over substance in terms of whether they used Rule 60B or whether they had directly appealed. Here we're on a direct appeal from a contempt sanctions order that also includes a denial of the motion to dissolve the injunction. So all of these issues are properly before you on direct review. There's no need to go through Rule 60B. There is no final judgment in this case. The other point- Why is that a formality? Why isn't it true that if you litigate the jurisdictional question, that's residue to counter a law that the case has applied to you, and so you need to comply with it whether or not it's right? But that's agudas, Your Honor. Again, Russia there had a- in that case, it was even further along because Russia had had already a direct review or presumably had had a direct review on the issue of jurisdiction and then exited the case. Here, there had been no direct review of that issue yet, and that's what we're doing here. We're on direct review, so there's no need to go under Rule 60B. On the whole point about service, that's mobile. The whole notion that you can ignore service of process because there is a waiver of sovereign immunity and personal jurisdiction on the underdue process, this court in mobile absolutely knocked that out of the park and knocked it out of the way and said, you need service of process when you're dealing with a foreign sovereign. As for paramedics, that did not involve a jurisdictional challenge. That was about the propriety of the order. In fact, the court said when you have an order that is entered with jurisdiction, then you have to comply, and if you don't, you're on the hook. Here, we had a jurisdictional challenge. So paramedics doesn't help that point. The whole- and I'll talk about Section 13 because they keep talking about all notices, all notices. That's the language that they wish if it were even sufficient, but that's not what this provision says. It says all account statements and notices, very different from the cases that they're talking about. So this whole concept of all notices means all is not what we're talking about with the text of the agreement. Well, why not? So it says all account statements and notices, and so it does say it's something more than account statements, and the account terms elsewhere do talk about notices of service and process. So if it says all notices, why shouldn't I read that as encompassing any kind of notice that might arise in connection with this contract? It doesn't talk about all service of process anywhere in the account terms. So we're dealing only with notice, account statements, and notices. Well, it does because, as Mr. Sen pointed out, 17.7 talks about waiving immunity from suit or legal process, whether from service of notice or other things. So it is talking about service of notice of process. So that is one use of the word notice in the agreement, and if Section 13 talks about all notices, why wouldn't it include one of the types of notice that the agreement mentions? Well, the problem, again, there is that under the Pablo Starr case in the Southern District of New York, you need a definite manifestation of agreement, such as a contract specifying service that you have accepted, service of judicial process in the United States, and that's not what we have here. What we have here is a notice provision that talks about, in vague terms, in a contract drafted by J.P. Morgan, that all account statements and notices have to be performed in this way. So if that were the case, and there was a waiver of service of notice in Section 17.7, or, yeah, 17.6, then the notice provision in Section 13 would be superfluous. So I'm not really sure that this gets them all the way. But I know I'm on the... Why don't you make one final point? Yes. I want to answer the question from Judge Lee. No, I'm Judge Kahn. Judge Kahn, I'm so sorry. I looked again, and I believe there was a hearing on July 24th. Yes. And there was a concession made on July 24th by your client that, yes, we violated both the temporary restraining order and the preliminary injunction, because it had been turned into a preliminary injunction, and we did it because we don't believe the order is valid. And then, five days later, on July 29th, the court said, based on its finding of contempt of the prior violation of the TRO and the PI, preliminary injunction, a $500,000... found your client in contempt. And then in August, the court imposed a $500,000 fine based on that previous finding of contempt. Did I get the sequence wrong? I don't believe, Your Honor, that you did. The whole point was your original question about what came first. And what I would say to this is the United Mine Workers case from the Supreme Court, where the Supreme Court, even though there was jurisdiction ultimately to enter the injunction, concluded that you couldn't have a punitive sanction for a civil contempt. I understand your argument. Okay, very well, Your Honor, unless there's anything more. Okay, thank you very much, Mr. Perla. The case is submitted.